# IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

ANDREW MCGUIRE, )
)
Plaintiff, )
)
v. ) Case No. 4:25-cv-00090-RK
)
IAN MORRIS, CALEB THIERRY, AND )
ASHLEY MCCUNNIFF IN THEIR )
INDIVIDUAL CAPACITIES, )
)
Defendants. )

## ORDER

This is a pro se § 1983 action brought by Plaintiff Andrew McGuire against three members of the Kansas City, Missouri, Police Department for alleged violations of Plaintiff's constitutional right against unreasonable search and seizure under the Fourth Amendment. Before the Court are several pending motions: (1) Plaintiff's motions to exclude and/or strike evidence, (Docs. 144 at 5, 147, 148, 149 at 11-12); (2) Plaintiff's motion for partial summary judgment, (Doc. 137); and (3) Defendants' motion for summary judgment, (Doc. 145).

After careful consideration and for the reasons explained below, the Court finds that Defendants are entitled to qualified immunity as to Plaintiff's Fourth Amendment § 1983 claim as to Defendants' initial approach to conduct a "knock and talk" at what is the back door of Plaintiff's residence but that Defendants are not entitled to qualified immunity, and Plaintiff is entitled to summary judgment as to liability, to the extent Defendants remained at the back door and knocked again after Plaintiff verbally told Defendants to "get off the property," revoking any implied consent Defendants may have had to conduct a knock and talk. The Court therefore **ORDERS** that (1) Plaintiff's motions to exclude and/or strike are **DENIED**; (2) Plaintiff's motion for partial summary judgment is **GRANTED in part DENIED in part**; and (3) Defendants' motion for summary judgment is **GRANTED in part** and **DENIED in part**.

## Background[1]

Following the Court's dismissal Order, only Plaintiff's claim under the Fourth Amendment for unreasonable search against Kansas City, Missouri, Police Department ("KCPD") Officers Ian Morris and Caleb Thierry and KCPD Sergeant Ashley McCunniff remains.[2] (Doc. 92 at 17.)

Plaintiff resided at 3021 Walnut Street, Kansas City, Missouri, at all times relevant to his remaining claim. On or about September 6, 2023, Plaintiff published a post on Facebook which stated, "As a US Marine I was able hit a target consistently at a longer distances [sic] than it is from my house to the Mayor's house, that coupled with our 2nd amendment federal rights and our Article 1 section 26 state prohibitions, is why I am not scared of government." (Doc. 142-10.) The post contained a photo originally shared by the Missouri Firearms Coalition which depicted

---

[1] Except where otherwise noted, these facts are taken from the parties' statements of uncontroverted material facts. The Court has omitted facts properly controverted, facts asserted that are immaterial to the resolution of the pending motion, facts asserted that are not properly supported by admissible evidence, legal conclusions, and argument presented as an assertion of fact. Uncontroverted facts are incorporated without citation. In addition, officer-worn body camera footage recorded much of the interaction at the heart of this dispute, and Defendants have placed that footage in the summary judgment record of each motion. (*See* Docs. 142-1, 146-1.) Because "neither party disputes the accuracy of the video or alleges that it has been altered in any way," the Court views "the facts in the light depicted by the videotape." *Ransom v. Grisafe*, 790 F.3d 804, 807 (8th Cir. 2015) (quoting *Scott v. Harris,* 550 U.S. 372, 381 (2007)). However, the parties as summary judgment movants must still carry their burden to set forth facts establishing they are entitled to judgment as a matter of law.

The Court notes that while Plaintiff filed a reply in support of his motion for partial summary judgment, he failed to respond to Defendants' statement of additional facts as required by Local Rule 56.1(c) and Federal Rule of Civil Procedure 56(e). "Unless specifically controverted by the moving party, all facts set forth in the statement of the opposing party are deemed admitted for the purpose of summary judgment." Local Rule 56.1(c). Although Plaintiff is *pro se*, he must still abide by the governing procedural and substantive rules. *See Soliman v. Johanns*, 412 F.3d 920, 922 (8th Cir. 2005) ("Even pro se litigants must comply with court rules and directives."). Therefore, properly supported facts in Defendants' brief in opposition to Plaintiff's motion for partial summary judgment are deemed admitted for purposes of Plaintiff's motion.

Finally, the facts that Plaintiff set forth in his motion for partial summary judgment are not properly supported as required by Rule 56(c)—almost all of them do not cite to the record. However, because Plaintiff is proceeding pro se and because Plaintiff's attached declaration generally supports the facts which are missing citations, the Court exercises its discretion to consider these facts in ruling on Plaintiff's summary judgment motion.

[2] Plaintiff asserted a myriad of claims against other KCPD defendants as well as Kansas City government defendants. All that remains in this case is a single Fourth Amendment § 1983 claim against these three KCPD officers based on one interaction with Plaintiff as described above. This summary judgment order, and any proceedings that follow, is (and will be) narrowly focused on this single claim.

2

the silhouette of a deer with a scope and crosshair layered over it and the words "American hunters outnumber the world's armies . . . combined and they're all snipers."

KCPD Officer Julie Tomasic,[3] a member of the Kansas City Mayor's security team at the time, saw the post. Officer Tomasic discussed the post with Sergeant McCunniff and requested Sergeant McCunniff contact Plaintiff to assess his threat level.[4]

Plaintiff's residence at 3021 Walnut Street is a two-story house. (Doc. 138 at 15-16.) A sidewalk runs along the front of the residence and paved steps lead directly to a front porch. A mailbox and two doorbells are situated on the wall directly to the right of the front door, along with an address plaque. (*Id.* at 18.) The front yard is not fenced; however, a wood fence begins at the front porch and encloses the side and back yards. An alley runs along the rear of the residence. (*Id.* at 10-12.) Directly behind the residence and on the outside of the fence and gate is a parking area. (*Id.* at 12.) There is a gate and paved walkway leading to the back door of the residence.

On September 8, 2023, two days after the post, Officer Tomasic watched Plaintiff's residence to ensure he was home before Defendants conducted a residence check. Officer Tomasic observed Plaintiff arrive at his residence in a blue car via the alley, parked the car in the rear parking area, and entered his home through the back door. This observation, coupled with past observations of Plaintiff, his residence, and parking location led Officer Tomasic to believe that Plaintiff used the back door as his primary entrance. Officer Tomasic relayed this information to Sergeant McCunniff.

Based upon the information relayed from Officer Tomasic, as well as Sergeant McCunniff's knowledge that some homes in the area were "divided into separate residences," Sergeant McCunniff decided that she and Officers Morris and Thierry would contact Plaintiff at his back door utilizing the alley access where Plaintiff parked the blue car. (Doc. 142 at ¶ 49.) Plaintiff's back door was visible from the parking area. The gate was unlocked.

Defendants entered Plaintiff's back yard through the gate located at the parking area in the alley. They followed a paved path to Plaintiff's back door. Officer Morris knocked two separate times. (Docs. 142-1 and 146-1 at 0:18, 1:04.) After about one minute and without receiving a

---

[3] Officer Tomasic was initially a named defendant; however, the Court dismissed all counts alleged against her in its October 2, 2025 Order ruling on Defendants' motion to dismiss. (Doc. 92.)

[4] Sergeant McCunniff was a member of KCPD's Crisis Intervention Team, a unit which addresses mental health issues.

response, Officer Morris and Sergeant McCunniff followed the paved walkway around the side of the residence and toward the front of the property. Officer Thierry remained in the back yard. At that time, Plaintiff opened the back door and asked Officer Thierry, "Can I help you? Are you allowed to be on my property?" (*Id.* at 2:33.) Officer Thierry responded, "Hey, no, we were just wanting to talk to you, if that's alright." Plaintiff told Officer Thierry, "No," and closed the door before he quickly reopened it and stated, "Get off the property."[5] Officer Thierry, having already called for Officer Morris and Sergeant McCunniff to return to the back yard over the radio, waited in the back yard for them to return. When they came back around to the back of the house, Officer Thierry told Officer Morris and Sergeant McCunniff, "He asked, 'Can I help you?' and I said, 'Hey, you're not in trouble we just want to talk to you' . . . and he said, 'no, get off my property.'" (*Id.* at 3:07.) Officer Morris then paused for a second, walked up the steps to the back door, and knocked on the back door for a third time. (*Id.* at 3:24.)

Plaintiff eventually began to speak with Officer Morris through the door. The body camera footage does not capture what Plaintiff said (from the inside of the door), and the parties do not set forth anything that Plaintiff said while the door was closed. However, the body camera footage does capture Officer Morris and Sergeant McCunniff explaining at least twice that they noticed Plaintiff used his back door more than the front door and that they saw his car was parked in the back. (*Id.* at 5:25, 7:00.) Sergeant McCunniff and Officer Morris also mentioned the presence of construction in the area.[6] (*Id.* at 5:15.) Officer Morris offered to go to the front door to speak with Plaintiff. (*Id.* at 7:00.) Plaintiff eventually opened the back door, more than seven minutes after Defendants initially entered his back yard. (*Id.* at 7:54.) Plaintiff proceeded to have a 90-minute conversation with Defendants.

### Discussion

Plaintiff asserts that Defendants violated his Fourth Amendment right to be free from unreasonable searches when they entered his back yard and knocked on his back door. Plaintiff also argues that to the extent Defendants may have had implied consent to knock on his back door

---

[5] Insofar as the parties dispute whether Plaintiff said "please," the Court finds the presence of the word "please" to be immaterial to the issues present.

[6] In a sworn interrogatory, Officer Thierry stated that he observed road construction, "which made access to the front door difficult." (Doc. 142 at ¶ 50.)

at least initially, they exceeded the scope of that consent by their continued presence and knocking for a third time after Plaintiff directed the officers get off of his property.

I.      **Motions to Exclude and/or Strike, (Docs. 144, 147, 148, 149)**

Plaintiff moves to exclude and/or strike (1) the affidavit of Officer Tomasic, (2) text messages between Officer Tomasic and Officer McCunniff concerning the September 8, 2023 residence check, and (2) "newly asserted factual claims regarding alleged construction affecting access to the residence" for failure to timely supplement responses during discovery pursuant to Federal Rules of Civil Procedure 37(c)(1) and 26(e)(1)(A). (Docs. 144 at 5, 147, 148, 149 at 11-12.) Alternatively, Plaintiff requests that the Court reopen discovery to allow Plaintiff to develop the record pursuant to Rule 56(d).

Rule 37 provides that if a party fails to timely supplement its disclosures and responses pursuant to Rule 26(e), the party may not "use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Rule 26(e)(1)(A) requires parties to supplement or correct its Rule 26(a) disclosures and responses to interrogatories, requests for production, and requests for admission "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

Insofar as Plaintiff asserts that Defendants failed to disclose Officer Tomasic's affidavit pursuant to Rule 26(e), the Federal Rules of Civil Procedure do not require Defendants to disclose an affidavit prepared for summary judgment during discovery. *Danielson v. Huether*, No. 4:18-CV-04039-RAL, 2021 WL 217706, at *2 (D.S.D. Jan. 21, 2021), *aff'd*, No. 21-1556, 2022 WL 259455 (8th Cir. Jan. 28, 2022) (collecting cases) ("Contrary to [the plaintiff's] belief, the affidavits used to support [the defendant's] motion for summary judgment did not need to be disclosed before the discovery deadline."). Plaintiff also asserts that Officer Tomasic's affidavit is insufficient under Rule 56(c) because it lacks foundation in that Defendants did not produce "employment records establishing [her] authority or role" or other reports or "independent documentation verifying her observations." Plaintiff's suggestion that a lack of employment records referencing Officer Tomasic's role with KCPD is fanciful—Plaintiff himself initially named Officer Tomasic as a defendant based upon her involvement before the Court dismissed allegations against her for failure to state a claim. (*See* Doc. 90 at ¶ 21 (complaint alleging that

"Officer Julia Tomasic (#3719) is a KCPD officer who participated in the events alleged, including records/complaint activity and the protection-order sequence"). The affidavit contains sufficient facts establishing her personal knowledge of the incident. (Doc. 142-9 at ¶¶ 1-4, 8-11.) Any supposed lack of corroboration goes to the weight of Officer Tomasic's affidavit rather than its admissibility.

Plaintiff also argues that text messages between Officer Tomasic and Sergeant McCunniff were not supplemented in a timely manner because Defendants did not produce them until March 27, 2026, the last day of discovery. Initially, the Court notes that the text messages are not a part of the summary judgment record, and therefore there is no evidence for the Court to strike at this time. Nevertheless, the Court finds that Defendants' actions were consistent with the standards for required disclosures set forth in Rule 26. According to Defendants' counsel, counsel was aware that Officers Tomasic and Sergeant McCunniff discussed Plaintiff and the circumstances leading to the officers' visit on or about September 8, 2023, but he was unaware that text messages existed until March 27, 2026, which is when counsel immediately supplemented Defendants' initial disclosures and request for production responses. (Doc. 150 at 2, Doc. 141.) Moreover, Plaintiff has been aware of Officer Tomasic's involvement, and therefore the potential need to depose her, since July 29, 2025, when Defendants served their initial Rule 26 disclosures identifying Officer Tomasic as an officer who may have discoverable information. (Doc. 150-1.)

Finally, Plaintiff argues that the Court should prevent Defendants from arguing on summary judgment that construction in front of Plaintiff's house made access to the front entrance difficult because Defendants did not disclose this "factual theory" during discovery, it's not supported by the summary judgment record, and it was not "subject to investigation." (Doc. 148 at 3-4.) Setting aside the fact that Defendants were under no obligation to disclose "factual theories" during discovery, Plaintiff was clearly on notice of the potential assertion. To state the obvious—the construction was in the area of Plaintiff's own residence. Moreover, officer-worn body camera footage in the summary judgment record reveals that Plaintiff acknowledged the presence of construction and its potential to hinder access to his house to officers at the beginning of their conversation. (Doc. 146-1 at 8:00-8:15.)

Plaintiff has failed to establish that Defendants failed to initially disclose or timely supplement their disclosures and responses pursuant to Rule 26. Accordingly, Plaintiff's motions to exclude and/or strike evidence are **DENIED**.

Alternatively, Plaintiff requests that the Court reopen discovery pursuant to Rule 56(d) to allow Plaintiff to depose Officer Tomasic and obtain employment records, "all" communications and underlying materials, and construction records. (Doc. 148 at 5.) A district court may open discovery where a party opposing summary judgment "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Rule 56(d). To obtain relief under Rule 56(d), Plaintiff must "file an affidavit describing: (1) what facts are sought and how they are to be obtained; (2) how these facts are reasonably expected to raise a genuine issue of material fact; (3) what efforts [he] has made to obtain them; and (4) why [his] efforts were unsuccessful." *Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (internal quotation marks omitted).

To begin, Plaintiff has not demonstrated how additional facts obtained from Officer Tomasic or document requests could create a genuine issue of material fact related to Defendants' motion for summary judgment. Moreover, Plaintiff has failed to describe what efforts, if any, he took to conduct Officer Tomasic's deposition or obtain the other documents cited, and why those efforts were unsuccessful. Plaintiff filed the case on February 11, 2025. The first Scheduling Order, entered July 30, 2025, provided that the discovery period would end on January 26, 2026. (Doc. 70.) Plaintiff jointly requested that date. (Doc. 63.) That date was later extended to March 27, 2026, again at the request of both parties. (Docs. 111, 114, 116.)

On March 4, 2026, Plaintiff requested another extension of the Scheduling Order to complete the depositions of Defendants Morris, Thierry, and McCunniff and to "conduct necessary follow-up discovery." (Doc. 129 at 1-2.) The Court denied that request without prejudice, finding Plaintiff had not established an inability to conduct those depositions within the discovery period. (Doc. 133.) The Court explained: "After completing KCPD Defendants' depositions, Plaintiff may file a motion to extend the discovery deadline for any remaining outstanding discovery as appropriate and necessary, but should be sure to satisfy the requirements of Local Rule 16.3 (namely, to include a detailed proposed amendment to the discovery deadline and any other deadlines requested to be extended, as well as to specifically describe the remaining discovery that will be sought)." (*Id.* at 2.) Plaintiff did not follow that process. Plaintiff provides no explanation for why the discovery window was inadequate or why he waited until after the window closed and after Defendants filed their motion for summary judgment to request the evidence he believes is necessary to support his case. As discussed above, Plaintiff was put on notice of Officer Tomasic's

7

involvement in the underlying interaction, as well as the presence of construction in the vicinity of his own home. Plaintiff chose not to explore those topics during the previously extended discovery period. Finally, Plaintiff's request for Rule 56(d) is inconsistent with his pending motion for summary judgment wherein he argues that he is entitled to summary judgment based on the current record.

For these reasons, Plaintiff's alternative motion for Rule 56(d) relief is **DENIED**.

## II. Cross Motions for Summary Judgment

### A. Legal Standard

Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment if the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In this context, a fact is material if it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Arnett v. Norris*, 160 F.4th 921, 925 (8th Cir. 2025). In resisting summary judgment, the nonmoving party may not rest on the allegations in its pleadings, but must, by affidavit and other evidence, set forth specific facts showing that a genuine issue of material fact exists. Fed. R. Civ. P. 56(c); *see also Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). "When cross-motions for summary judgment are presented to the Court, the standard summary judgment principles apply with equal force." *Wright v. Keokuk Cnty. Health Ctr.*, 399 F. Supp. 2d 938, 945-46 (S.D. Iowa 2005).

### B. Analysis

Plaintiff and Defendants move for summary judgment. Plaintiff seeks summary judgment on liability only—that is, whether the Officers' warrantless entry into the curtilage of Plaintiff's home violated his Fourth Amendment rights. (Doc. 137-1.) In opposition to Plaintiff's motion for summary judgment and in Defendants' own motion for summary judgment, they argue they are entitled to qualified immunity under the "knock and talk" exception. (Doc. 142 at 11-14; Doc. 146 at 5-8.) Therefore, the Court begins by addressing the issue of qualified immunity as to the two subparts of Plaintiff's Fourth Amendment claim. In doing so, the Court is mindful of the separate inferences to be drawn in favor of each movant considering the cross motions for summary judgment.

### 1.      Qualified Immunity

"[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Estate of Nash v. Folsom*, 92 F.4th 746, 754 (8th Cir. 2024) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)).  To defeat qualified immunity, "a plaintiff must show that (1) his constitutional rights were violated, and (2) those rights were clearly established at the time of the deprivation." *Ledbetter v. Helmers*, 133 F.4th 788, 793 (8th Cir. 2025) (internal quotation marks omitted).

A clearly established right is one that is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).  "In cases alleging unreasonable search or seizures . . . courts should define the 'clearly established' right at issue on the basis of the 'specific context of the case.'" *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).   Courts "have discretion to decide which of the two prongs of qualified-immunity analysis to tackle first." *Smith v. City of Minneapolis*, 754 F.3d 541, 546 (8th Cir. 2014) (internal quotation marks omitted).

### 2.      The Fourth Amendment – Unreasonable Search and the "Knock and Talk" Exception

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.  At the Fourth Amendment's "'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" *Florida v. Jardines*, 569 U.S. 1, 6 (2013) (quoting *Silverman v. United States,* 365 U.S. 505, 511 (1961)).  "When the Government obtains information by physically intruding on persons, houses, papers, or effects, a 'search' within the original meaning of the Fourth Amendment has undoubtedly occurred." *United States v. White*, 928 F.3d 734, 739 (8th Cir. 2019) (internal quotation marks omitted).

But, the Fourth Amendment does not prevent all investigations on private property—only the search of premises where the individual has a reasonable expectation of privacy violates the Fourth Amendment.  *United States v. Bennett*, 972 F.3d 966, 970 (8th Cir. 2020).   The area "immediately surrounding and associated with the home," otherwise referred to as the "curtilage," is regarded as "part of the home itself for Fourth Amendment purposes." *Jardines*, 569 U.S. at 6.

9

Warrantless entry into the curtilage is presumptively unreasonable absent consent or exigent circumstances. *Kentucky v. King*, 563 U.S. 452, 460 (2011).

Defendants do not dispute that Plaintiff's back yard was curtilage. And, there is no dispute that Defendants did not have express consent or a warrant when they entered Plaintiff's back yard, nor have Defendants argued that exigent circumstances were present. Therefore, Defendants' warrantless entry into Plaintiff's back yard was only justified (and consistent with the Fourth Amendment) if they had implied consent to enter the curtilage of Plaintiff's residence. *United States v. Wells*, 648 F.3d 671, 679 (8th Cir. 2011).

Commonly referred to as the "knock and talk" exception, *id.*, an officer may, without a warrant, enter the curtilage "if there is a legitimate law enforcement objective and the intrusion upon one's privacy is limited." *Thompson v. Cockrell*, 154 F.4th 971, 976 (8th Cir. 2025). That is, their movements must be restricted "to those areas generally made accessible to visitors." *Wells*, 648 F.3d at 679 (internal quotation marks omitted). Plaintiff does not dispute that Defendants possessed a legitimate law enforcement objective.

The Eighth Circuit has identified two justifications for the knock-and-talk rule. The first is that "areas generally made accessible to visitors—such as driveways, walkways, or similar passageways, [] are simply not areas in which a person can reasonably maintain any expectation of privacy." *Wells*, 648 F.3d at 679 (citing *United States v. Maestas,* 639 F.3d 1032, 1036-37 (10th Cir. 2011); *United States v. Pineda-Moreno,* 591 F.3d 1212, 1214-15 (9th Cir. 2010)). "The other is that homeowners grant members of the visiting public—mail carriers, sanitation workers, neighbors, and Girl Scouts, to name a few—an implied consent to enter these areas for those purposes that accompany the normal interactions of a social, civilized society." *Id.* (citing *United States v. Simms,* 626 F.3d 966, 969-71 (7th Cir. 2010)). Thus, officers "may approach a home and knock, precisely because that is 'no more than any private citizen might do.'" *Jardines*, 569 U.S. at 8 (quoting *King*, 563 U.S. at 469). The scope of a knock and talk is limited, and officers can exceed the scope in two general ways—either by being somewhere they should not be or by doing something that they are not supposed to do. *Id.* at 9 ("[T]he background social norms that invite a visitor to the front door do not invite him there to conduct a search.").

### 3. Defendants' Initial "Knock and Talk"

In Plaintiff's motion for partial summary judgment, Plaintiff argues that Defendants' initial warrantless entry into the curtilage of his property exceeded the scope of any implied license

Defendants had to enter his property because the uncontroverted facts establish "an obvious front entrance, complete with front steps, porch, doorbell, and front-door route," but Defendants instead entered his back yard and knocked on his back door. (Doc. 137-1 at 5.) Defendants assert that no Fourth Amendment violation occurred because they were conducting a knock and talk at the back door and it was reasonable for officers to believe that the back door was generally made accessible to visitors. (Doc. 146 at 6-7.)

Plaintiff's argument on this point focuses only on what he identifies as the obvious accessibility of the front door to visitors, and he fails to address or acknowledge caselaw suggesting that a knock and talk may occur at a door other than the front door under some circumstances. In *United States v. Wells*, for example, the Eighth Circuit held that law enforcement officers must first attempt to contact the property owner "at the place they would most logically be reached," which in that case, was the front door. 648 F.3d at 680. The police officers in *Wells* entered from the street in the front of the property. At 4:00 a.m., officers followed an unpaved path from the front of the property into the back yard/corner of the lot. *Id.* at 677. To get there, the officers had to walk past the paved walkway which led to the front door and a door to a carport attached to the home. *Id.* The Eighth Circuit emphasized that the officers had no reason to think that the unpaved driveway which went around the side of the home was an area "generally made accessible to visitors." *Id.* at 680. In this context, the Eighth Circuit recognized that "no Fourth Amendment search occurs when police officers who enter private property restrict their movements to those areas generally made accessible to visitors," and held that the police officers violated Wells' Fourth Amendment rights by exceeding any implied consent and that their knock and talk was not justified. *Id.* at 679.

In addition to *Wells*, the Supreme Court has considered the constitutionality of the knock-and-talk rule as applied to an officer's approach of a door other than the front door. *Carroll v. Carman*, 574 U.S. 13 (2014) (per curiam). The house in question in *Carroll* was present on a corner lot, with the front of the house facing a "main street" while the side of the house faced a "side street." *Id.* at 14. At 2:30 p.m., wishing to conduct a knock and talk, officers drove to the front of the house; however, there was no parking available. They turned onto the side street, where "they saw several cars parked [side-by-side] in a gravel parking area on the left side of the [] property." *Id.* The officers parked in that parking area on the "far rear of the property." *Id.* The

officers approached the house where they saw a sliding glass door on a "ground-level deck" which one of the officers thought "looked like a customary entryway," so they knocked on it. *Id.*

The district court instructed the jury that the knock-and-talk rule "allows officers without a warrant to knock on a resident's door or otherwise approach the residence seeking to speak to the inhabitants, just as any private citizen might" and "officers should restrict their movements to walkways, driveways, porches and places where visitors could be expected to go." *Id.* at 16. After the jury returned a verdict for the officer, the homeowner appealed. The Third Circuit reversed, holding that the officer violated clearly established law because the Fourth Amendment "'knock and talk' exception 'requires that police officers begin their encounter at the front door, where they have an implied invitation to go.'" *Id.*

The Supreme Court addressed only the Third Circuit's conclusion that the law was clearly established, pointing out that the single case upon which the Third Circuit relied (another Third Circuit case)[7] did not support its holding and that other state and federal courts had rejected the rule that a knock and talk must begin at the front door, holding in various different manners that officers may approach any area that they reasonably believe is accessible to visitors. *Id.* at 19-20 (citing Second, Seventh, Ninth Circuit cases and one New Jersey state case). Ultimately, the Supreme Court did not decide "whether those cases were correctly decided or whether a police officer may conduct a 'knock and talk' at any entrance that is open to visitors rather than only the front door." However, it found that the Third Circuit erred in finding that the officer was not entitled to qualified immunity because the constitutional rule they applied "was not 'beyond debate.'" *Id.* at 20 (quoting *Stanton v. Sims*, 571 U.S. 3, 10-11 (2013)).

District courts in the Eighth Circuit have applied *Wells* and/or *Carroll* in the qualified immunity context, with mixed results. *Compare Rosen v. Wentworth*, 13 F. Supp. 3d 944, 949 (D. Minn. 2014) ("*Wells* held that officers acting in accordance with the knock-and-talk rule must attempt to reach a home's residents by the *most* logical route[.]" (emphasis added)), *with Vernio v. Higgins*, No. CV 19-3024 (DWF/LIB), 2021 WL 3272181, at *5 n.7 (D. Minn. July 30, 2021)

---

[7] "*Marasco* held that an unsuccessful 'knock and talk' at the front door does not automatically allow officers to go onto other parts of the property. It did not hold, however, that knocking on the front door is required before officers go onto other parts of the property that are open to visitors. Thus, *Marasco* simply did not answer the question whether a 'knock and talk' must begin at the front door when visitors may also go to the back door." *Carroll*, 574 U.S. at 18-19 (citing *Estate of Smith v. Marasco*, 318 F.3d 497 (3d Cir. 2003)).

(agreeing that the knock-and-talk rule under similar circumstances was not clearly established and concluding that based upon *Wells* and *Carroll* "there appears to be room for an officer to reasonably enter a home's curtilage without first knocking on the front door, so long as that area is in a place where the homeowners might logically be reached or is made generally accessible to visitors and other requirements of the rule are met"), *and Theis v. Van Der Stad*, No. 24-CV-2460 (PJS/LIB), 2025 WL 2408679, at \*4-5 (D. Minn. Aug. 20, 2025) (citing *Wells* and stating that "the Eighth Circuit has held that a law-enforcement officer may not attempt to contact a homeowner at a secondary point of entry without first trying the front door" and recognizing that *Wells* may have "left the scope of the knock-and-talk rule in doubt"). Where judges have a divergence of views on the particulars of a constitutional rule, "it is unfair to subject police to money damages for picking the losing side of the controversy." *Pearson v. Callahan*, 555 U.S. 223, 245 (2009) (internal quotation marks omitted).

While these cases may have put Defendants on notice that the knock and talk implied license is not unlimited, Plaintiff fails to point to any binding authorities defining the relevant contours of his Fourth Amendment right at the necessary level of specificity for the qualified immunity analysis. Plaintiff cites to *Collins v. Virginia*, 584 U.S. 586 (2018), for the general proposition that "curtilage is 'part of the home itself for Fourth Amendment purposes,'" and *Payton v. New York*, 445 U.S. 573 (1980), likewise for the general proposition that "[t]he Fourth Amendment has drawn a firm line at the entrance to the house." (Doc. 144 at 3.) Neither case is sufficiently analogous. As the Supreme Court has instructed, the qualified immunity "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (internal quotation marks omitted).

The Court is unaware of any controlling Supreme Court or Eighth Circuit precedent that would have placed Defendants on notice—that is, that the question is "beyond debate"—that they could not approach the back door under these circumstances. Defendants utilized the alley behind Plaintiff's residence which led to the parking area for Plaintiff's residence, where they knew Plaintiff himself arrived and park the car he was driving. *Cf. Carroll*, 574 U.S. at 14 (officers saw and utilized gravel parking area at "the far rear of the property"). They could see Plaintiff's back door from the parking area. The unlocked gate and paved walkway beginning at the alley-and-parking-side entrance led to the back door of the residence. *See United States v. Robbins*, 682 F.3d 1111, 1115 (8th Cir. 2012) (entry through an unlocked gate is not unreasonable during a knock and

13

talk). At least one officer observed road construction which made access to Plaintiff's front door difficult. (Doc. 142 at ¶ 50.) Defendants reasonably believed that Plaintiff primarily used the back door (and in fact, Plaintiff testified at his deposition that people he invites to his home use the back door). In short, these are all facts and circumstances which could suggest to a reasonable officer that the back door was generally made accessible to visitors. (Doc. 142 at ¶ 51; Doc. 142-8 at 87:23.) A reasonable officer might well be uncertain about the propriety of these or similar scenarios. Given the longstanding right to knock and talk but lack of clearly established limitations that would lead reasonable officers to believe that they were prohibited from knocking on Plaintiff's back door under these circumstances, the Court cannot say (and Plaintiff has not established) that Defendants' initial approach to the back door violated clearly established constitutional law. Therefore, Defendants are entitled to qualified immunity as to the initial attempted knock and talk.

### 4. Conduct After Initial Knock and Talk

Plaintiff also argues that even if Defendants had an implied license to knock at his back door, that implied consent was revoked when Plaintiff told Officers Thierry to leave and to get off his property. (Doc. 137-1 at 5.) Defendants fail to set forth any substantive argument on this point. They only attempt to justify their continued presence to the extent that "less than a minute" after Plaintiff told Officer Thierry to get off of his property, Plaintiff "engaged in conversation with Officer Morris." (Doc. 142 at 15; Doc. 146 at 8-9.) Therefore, as Defendants argue, they could reasonably conclude that the conversation was consensual.

Defendants not only fail to directly address Plaintiff's argument concerning his unequivocal revocation of any implied consent, they also simply ignore what happened in the interim between Plaintiff's statement to Officer Thierry that the officers leave and when Plaintiff eventually opened his door and "engaged in conversation" with the officers. After having already approached Plaintiff's back door and knocked two separate times, Officer Morris learned from Officer Thierry that Plaintiff had opened the back door and told the officers to get off of his property. Officer Thierry recounted the entirety of the short interaction with Plaintiff to Sergeant McCunniff and Officer Morris when they came back around to the back door after they were radioed by Officer Thierry to do so. Officer Morris paused before he walked back up the steps to Plaintiff's back door and then knocked for a third time. None of the officers retreated.

The Court finds immaterial that Plaintiff subsequently engaged with the officers because the officers no longer had consent to continue the interaction after Plaintiff unequivocally told them to get off of the property.[8] At the time of the encounter, it was clearly established that absent a warrant or exigent circumstances, an officer has an implied license to conduct a knock and talk within the parameters described above, that is, that the implied license is limited by the scope of the consent given, i.e., by "the background social norms that invite a visitor to the front door." *Jardines*, 569 U.S. at 8. Likewise, it was clearly established that the officer may not exceed the limits of the public implied license, i.e., he may not do anything "more than any private citizen might do." *Id.* ("Complying with the terms of that traditional invitation does not require fine-grained legal knowledge; it is generally managed without incident by the Nation's Girl Scouts and trick-or-treaters."); *see also Canny v. Bentley*, 307 F. Supp. 3d 940, 951 (N.D. Iowa 2018) ("While neither the Eighth Circuit Court of Appeals nor the United States Supreme Court has had the opportunity to review a case containing facts identical to the ones here, the *Jardines* holding is specific enough for a reasonable officer to understand that lingering around a person's front door without knocking and surreptitiously observing the occupants inside the home through a gap in a curtain is unconstitutional.").

In short, it was clearly established at the time that "an officer who enters with consent of a landowner must leave when that consent is revoked . . . by unequivocal acts or statements." *Coates v. Powell*, 650 F. Supp. 2d 932, 939 (W.D. Mo. 2009), *aff'd*, 639 F.3d 471 (8th Cir. 2011) (citing *United States v. Parker,* 412 F.3d 1000, 1002 (8th Cir. 2005)). After Plaintiff unequivocally told Officer Thierry to get off of his property, any implied license for the officers to be on Plaintiff's property was revoked as of that moment, and no reasonable officer would have believed that they were permitted to continue knocking or to otherwise remain on the property at that point. Officer Thierry conveyed almost verbatim Plaintiff's revocation (to leave and "get off the property") to Sergeant McCunniff and Officer Morris when they came back to the back door. The Court therefore finds that Defendants are not entitled to qualified immunity as to their continued presence

---

[8] The Court notes that, although Plaintiff talked to Officer Morris through the door for several minutes, it is apparent that the conversation centered on Plaintiff's ostensible displeasure with Defendants' presence at his back door.

15

on Plaintiff's property and returning to the back door to knock for a third time after Plaintiff unequivocally directed them to leave.[9]

With regard to Plaintiff's motion for summary judgment on the issue of liability, he must show "that he was deprived of a right secured by the Constitution and the laws of the United States and that the deprivation was committed by a person acting under color of state law." *Alexander v. Hedback,* 718 F.3d 762, 765 (8th Cir. 2013). There is no question that Defendants, as KCPD officers investigating a potential threat posted on the internet by Plaintiff directed toward the Mayor of Kansas City, were acting under color of state law on September 8, 2023. And, as discussed above, the uncontroverted facts establish that Defendants' continued presence and Officer Morris's third knock on Plaintiff's back door after Plaintiff revoked any implied consent amounts to (and therefore caused) a violation of Plaintiff's Fourth Amendment right to be free from unreasonable search. Accordingly, Plaintiff is entitled to summary judgment against Defendants on the issue of liability as to his Fourth Amendment § 1983 claim as discussed above. All that remains for the jury to decide is the issue of damages.

[remainder of page intentionally left blank]

---

[9] The Court emphasizes that the only basis the Defendants raise as justifying their presence at Plaintiff's back door—whether as to the initial approach or to remaining on the property and knocking a third time after Plaintiff told them to leave—is the knock-and-talk exception. Defendants do not argue any other exception, such as exigent circumstances, applies. Accordingly, the sole issue before the Court is whether the knock-and-talk exception applies to Defendants' conduct.

## Conclusion

After careful consideration and for the reasons explained above, the Court **ORDERS** that:

(1) Plaintiff's motions to exclude and/or strike, (Docs. 144, 147, 148, 149), are **DENIED**;

(2) Plaintiff's motion for partial summary judgment, (Doc. 137), is **GRANTED in part** as to Defendants' liability for their continued presence on his property and Officer Morris knocking on the back door for a third time after Plaintiff revoked any implied consent, and is **DENIED in all other respects**; and

(3) Defendants' motion for summary judgment, (Doc. 145), is **GRANTED in part** as to Plaintiff's Fourth Amendment claim based on the initial knock and talk approach, and is **DENIED in all other respects**.

**IT IS SO ORDERED**.

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

DATED:  July 23, 2026